**Michael James ROCKE and Barbara Rocke, Plaintiffs-Appellants,**

v.

**CANADIAN AUTOMOBILE SPORT CLUB, Club Autosport Mauricien, Sports Car Club of America, Defendants-Appellees.**

**No. 80–4069.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1981.

Decided Oct. 26, 1981.

Michael B. Moore, Cartwright, Sucherman, Slobodin & Fowler, Inc., San Francisco, Cal., for plaintiffs-appellants.

Richard Melbye, Owen, Melbye & Rohlff, Redwood City, Cal., argued, for defendants-appellees; Timothy C. Davis, Yale W. Rohlff, Redwood City, Cal., on the brief.

Before DUNIWAY, ANDERSON and REINHARDT, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

I. *BACKGROUND*

On September 3, 1978, the auto racing career of Michael James Rocke came to an all too familiar end. While Rocke was competing in a Formula Atlantic road race on the streets of the City of Three Rivers, Quebec, Canada, his car skidded on the slippery racing surface and went out of control. The car then struck a guard rail which, according to Rocke, failed to perform its intended function of safely arresting the car's motion. Instead, the guard rail was lifted into the air by the force of the impact, and then fell downward with a guillotine-like stroke which sliced off the front of Rocke's car. Rocke suffered extensive, painful, and disabling injuries in the accident, including a severed right foot.

The Formula Atlantic series in which Rocke was competing at the time of the accident is an important training ground for aspiring young North American road racing drivers who seek to break the traditional European dominance of the sport. Several Formula Atlantic races are staged each year throughout Canada and the Continental United States. The Canadian races are sanctioned by the Canadian Automobile Sport Club (CASC), while the Sports Car Club of America (SCCA) sanctions the U.S. races. Club Autosport Mauricien (CAM) is a Quebec affiliate of CASC which was also involved in staging the 1978 Three Rivers event.

On March 22, 1979, Rocke and his wife Barbara filed a diversity action in the Northern District of California against CASC, CAM, and SCCA. The Rockes alleged three causes of action for Michael's personal injuries, Barbara's loss of consortium, and for punitive damages. A protective action was also filed in Quebec and subsequently stayed pending the outcome of the action in the United States.

The named defendants appeared specially and filed a motion to dismiss for lack of *in personam* jurisdiction. In addition, the SCCA moved to be dismissed as a defendant on the ground that it was not involved in planning, sanctioning, or supervising the Three Rivers event.

CASC offered an affidavit by its Executive Director, Robert J. Hanna, which indicated that CASC had never transacted or solicited any business in California and that it had never maintained an office or held any tangible property in California. The affidavit further asserted that the only contact which CASC had ever had with California was the sending of observers to Formula Atlantic events held in Long Beach, California, in 1978 and 1979. CASC officials were necessarily confined to observer roles at the Long Beach races because CASC is prohibited under the International Rules of Motor Sport from sanctioning any events held outside of the territorial confines of Canada. CAM offered a similar affidavit by its President, Claude Pilotte, who asserted that CAM had not maintained any contact whatever with California.

The Rockes countered with fairly substantial documentary evidence of CASC and CAM contact with a number of individual drivers who resided in California. They argued that CASC and, to a lesser extent CAM, had engaged in a consistent practice of advertising and driver solicitation in California which provided sufficient "minimum contacts" with California to sustain *in personam* jurisdiction there.

The Rockes produced CASC mailing lists for 1976, 1977, and 1978. The lists showed that in each of those years, CASC regularly corresponded with 43, 36, and 26 California drivers, respectively. Various examples of the substance of CASC correspondence were offered, including, inter alia, publication of technical regulations, solicitations to participate in specific events, and press release-style updates on the progress of competition. Evidence that CASC had advertised the Three Rivers event in two national motor sports publications was also produced. Michael's entry form for the Three Rivers race disclosed that he had duly entered and paid the entry fee.

An affidavit authored by Michael asserted that CASC had maintained extensive contacts with California drivers via correspondence and magazine advertising solicitations. Michael averred that his participation in the Three Rivers race was a direct result of CASC and CAM solicitation. The affidavit further alluded to hardships which the Rockes would face if forced to litigate their claims in Quebec, mentioning specifically the posting of a large bond and the likely prospect that the proceedings would be conducted in the French language.

A supplemental affidavit signed by the Rockes' attorney set out in greater detail the difficulties which were anticipated in the event of litigation in Quebec. Based upon consultation with local counsel in Quebec, the attorney noted six factors which he argued tipped the balance of hardships in the Rocke's favor, including:

1. A nonresident bond in the amount of $7,200.00;

2. The absence of a *res ipsa loquitur* theory in Canada;

3. The non-availability of punitive damages;

4. The admissibility of evidence relative to collateral sources of payments;

5. The rating of future disability damages in a manner which would tend to restrict Michael's recovery; and

6. The use of the French language.

On January 18, 1980, the district court dismissed the action as to all three defendants. The court found that CASC and CAM had not initiated sufficient contact with California to justify a finding of *in personam* jurisdiction, either generally or over the Rockes' specific claim. The court also dismissed the SCCA because it had not been involved in sanctioning the Three Rivers race. The Rockes appeal.

## II. *DISCUSSION*

The Rockes argue on appeal that the district court erred in finding that the contacts of CASC and CAM with California were insufficient to support *in personam* jurisdiction under the theories of either "general" or "special" jurisdiction. They also argue that the SCCA should not have been dismissed.

The lengthy and sometimes frustrating history of American theories of personal jurisdiction has been told elsewhere and will not be recounted here. We pause only to sketch briefly the ground rules as they currently stand.

A forum state may exercise personal jurisdiction over a defendant for any claim related or unrelated to the defendant's contacts with the forum where the contacts are "continuous and systematic." *See, e. g., Perkins v. Benguet Consolidated Mining Company*, 342 U.S. 437, 445, 72 S.Ct. 413, 418, 96 L.Ed. 485 (1952); *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977). Where the nonresident defendant's contact with the forum state is too tenuous to support the assertion of jurisdiction for the purpose of hearing unrelated claims, the constitutionality of the assertion of jurisdiction over related claims is judged under a three-pronged standard:

"(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable."

*Data Disc, supra*, 557 F.2d at 1287.

California Code of Civil Procedure § 410.-10, California's long arm jurisdiction statute, allows for the exercise of jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." Consequently, we need inquire here only whether assertion of jurisdiction by California would comport with due process.

We can hold without hesitation that the contacts of CASC and CAM with California would not support an assertion of

"general" jurisdiction over all claims against the two sanctioning bodies. Neither maintains a regular place of business in California, and neither has ever conducted any racing activities there. CASC's sending of representatives to two Formula Atlantic races in Long Beach did not constitute "conducting business" in California. While CASC's solicitation of driver entries entailed the solicitation of entry and engine registration fees from California drivers, these fees were not sought in order to reap a profit in the commercial sense, but rather to recoup the expenses of sanctioning the Formula Atlantic series.

We find it unnecessary to determine here whether an assertion of personal jurisdiction over CASC and CAM by California would satisfy the first two prongs of *Data Disc*. In *Insurance Company of North America v. Marina Salina Cruz*, 649 F.2d 1266 (9th Cir. 1981), this court addressed the "reasonableness" prong of the *Data Disc* analysis in a manner which precludes an assertion of jurisdiction by California here. Though the *Salina Cruz* panel did not purport to have constructed an exhaustive list, it did identify the following factors as pertinent to the reasonableness inquiry: (A) the extent of the defendant's purposeful interjection into the forum state; (B) the burden of defending in the forum state; (C) the extent of the conflict with the sovereignty of the defendant's state; (D) the forum state's interest in adjudicating the dispute; (E) the most efficient judicial resolution of the controversy; (F) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (G) the existence of an alternative forum. 649 F.2d at 1270. We consider each in turn.

### A. "Purposeful interjection"

The contacts of CASC and CAM with California were not extensive. Solicitation and correspondence were restricted to that necessary to obtain driver entries and to keep participants informed of new developments in the series. This factor would tend to weigh against jurisdiction in California.

### B. Burden of litigating in California

■ A primary concern under a due process analysis is with the burden placed upon the defendant. *Marina Salina Cruz, supra,* 649 F.2d at 1272. Though the burden of litigating the action in California would not be insurmountable for CASC and CAM, it would nonetheless be substantial. All of the alleged acts of negligence occurred in Quebec, most of the discovery would presumably be centered in Quebec, and many of the potential witnesses would be Canadian residents. Though modern transportation has indeed reduced some of the burden of litigation in a faraway forum, CASC and CAM nonetheless face a significantly greater burden in defending this action in California than in Quebec. The second *Salina Cruz* factor, therefore, also tends to militate against an assertion of jurisdiction in California.

### C. Conflict with Sovereignty of Defendant's State

■ Where the defendant is a resident of a foreign nation rather than a resident of another state within our federal system, the sovereignty barrier is "higher". 649 F.2d at 1272. Because CASC and CAM are unquestionably residents of Canada, we must observe that this factor tends also to undermine the reasonableness of personal jurisdiction in this case.

### D. Interest of Forum State

California clearly has an interest in litigating the Rockes' claims. If Michael's injuries prove to be permanently disabling, the economic impact will certainly be felt in California. On the other hand, California's interest is diluted somewhat because it has no reasonable interest otherwise in regulating the conduct of CASC and CAM. While California's interest thus has some impact in favor of approving jurisdiction there, it is not so strong as to counteract the factors which point to a contrary result.

### E. Most Efficient Resolution

Quebec would appear to be the most efficient forum to resolve this dispute. As the

# 400

situs of both the alleged acts of negligence and of the Rockes' injuries, its law would most likely control. In addition, as noted earlier, it is the "center" of the litigation from a discovery and trial efficiency standpoint.

### F. Convenient and Effective Relief for Plaintiff

The Rockes have argued forcefully that Quebec would be both a less convenient and less effective forum for relief than would California. We acknowledge that some difficulties are presented in taking this action to Canada. Yet we do not perceive the likelihood of recovery as being so significantly diminished in the Canadian forum as to justify California taking jurisdiction of this dispute.

### G. Availability of an Alternative Forum

The Rockes have not disputed the availability of an alternative forum in Canada. Indeed, an action has been filed there so as to preserve their rights as against the statute of limitations. CASC and CAM have represented that they would not object to defending this action in Canada.

On balance, these factors compel us to hold that it would not be reasonable to subject CASC and CAM to personal jurisdiction in California for these claims. Due process requires that we weigh more heavily the expectations of and burdens upon the defendants than we weigh the hardships upon the plaintiff. The cursory nature of the initial contacts with California, the burdens of litigating this dispute in California, the residency of the defendants in a foreign nation, and the availability of an alternative forum wherein an efficient resolution of the controversy may be obtained all counsel us to affirm the district court's holding that it lacked jurisdiction.

We summarily affirm the dismissal of the SCCA as a defendant. The record discloses unequivocally that it was not involved in sanctioning the Three Rivers race.

The judgment of the district court is AFFIRMED.